IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Criminal Case No.  06-cr-00374-WYD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

LINDA L. WILLIAMS,

      Defendant.

---

### ORDER

---

On Appeal from the United States Magistrate Judge for the District of Colorado

The Honorable Gudrun Rice
United States Magistrate Judge

Magistrate's Case No. 05-po-00022-GJR

---

THIS MATTER is before the Court on Defendant Linda L. Williams' amended

notice of appeal filed September 15, 2006, and opening brief filed April 10, 2007.  An

appeal was made to this Court pursuant to 18 U.S.C. § 3402.  Defendant appeals

Magistrate Judge Gudrun Rice's conviction and sentence entered on September 13,

2006, in which Defendant was sentenced to one year of supervised probation, under the

mandatory conditions of probation and two special conditions, and suspended three

months of incarceration.  Of the 13-counts filed against Defendant, 3 counts were

dismissed by the Government.  Defendant was acquitted of another 3 counts, but found

guilty of 7 counts, including:

1

- 3 counts of interference with a Forest Service Officer, in violation of 16 U.S.C. § 551 and 36 C.F.R. 261.3(a);

- 2 counts of conducting a service without authorization, in violation of 16 U.S.C. § 551 and 36 C.F.R. 261.10(c);

- 1 count of constructing a structure, fence, enclosure or other improvement without authorization, in violation of 16 U.S.C. 551 and 36 C.F.R. § 261.10(a); and

- 1 count of damaging property of the United States, in violation of 16 U.S.C. 551 and 36 C.F.R. § 261.9(a).

The Government's answer brief was filed on June 29, 2007, and Defendant's reply brief was filed July 16, 2007.  For the reasons stated below, I affirm Judge Rice's conviction and sentence.

## I.   BACKGROUND

On June 27, 2006, after a five day jury trial, Defendant was found guilty of the above 7 counts, related to her activities on and around her unpatented mining claims located in the Uncompahgre National Forest in Ouray County, Colorado, in the vicinity of the Pinecrest Extension and Oak Creek/Twin Peak trails.  (*See* Appellee's Answer 2-7.)  The jury trial began on June 21, 2006, in the Federal Courthouse in Grand Junction, Colorado.  (Appellant's Br. 6.)  All five days of the trial, from jury selection through jury verdicts and the Court's order, were recorded by sound recording equipment and no court reporter was present.  (*Id.*)  As a result, there are some inaudible portions of the record and some discussions occurring at the bench that were not recorded. (*Id.*)

At the trial, the Government offered evidence and testimony in support of one of its claims that Defendant had destroyed property of the National Forest Service, specifically a trail head sign near Defendant's unpatented mining claims.  (Appellee's

2

Answer 14 (citing Trial Tr., 105-09, June 23, 2006).)  Officer Closson, a law

enforcement officer with the Forest Service, had installed a surveillance camera near

the trailhead of the Oak Creek/Twin Peaks trails in response to repeated destruction of

signs in the area.  *Id.*  Officer Closson testified that he viewed the surveillance tape

upon returning to the area and seeing that a newly installed sign had been destroyed,

and that he recognized the person on the tape.  *Id.*  The tape was submitted into

evidence as Government's Exhibit 19 (Appellant's Br. 10), and was played for the jury

(Appellee's Answer 14 (citing Trial Tr., 107-09, June 23, 2006)).  Both before and after

the tape was played for the jury, the Government asked Officer Closson to identify the

person on the tape, to which Defendant objected.  (*Id.*)  After the tape was played, the

Court permitted Officer Closson to testify as to "who he believes that to be."

(Appellant's Br. 10.)  Defendant then asked to make a brief record on the issue.  (*Id.*)

The transcript does not reflect the record that Defendant made.  (*Id.* (citing Trial Tr.,

110, June 26, 2006).)

    Upon conclusion of the trial on June 27, 2006, the jury returned a verdict of guilty

on 7 of the 13 counts charged, not guilty on 3 of the charged counts, and the

Government dismissed 3 of the charges.  (Appellant's Br. 1.)  The Court set Defendant's

sentencing date for September 13, 2006.  (Appellant's Br. 2.)

    At the sentencing hearing on September 13, 2006, the Court sentenced

Defendant to a one-year term of supervised probation, with special conditions, and

three months of incarceration, which was immediately suspended.  (Appellant's Br. 2

(citing Sentencing Tr., 54-56, Sept. 13, 2006).)  The Court reviewed several special

conditions which were recommended by the United States Probation Officer.  (*Id.* at 14.)

3

Defendant objected to two special conditions in particular, which recommended that she be excluded from all lands of the Uncompahgre National Forest and from the South Pinecrest Extension Road and the Oak Creek/Twin Peak Trails. (*Id.* (citing Sentencing Tr., 35, Sept. 13, 2006).) Defendant claimed that the special conditions interfered with her ability to mine her unpatented claims, excluded her from visiting and using public lands, and were unnecessary in light of the mandatory conditions of probation. (*Id.*) Defendant also informed the Court that she was employed as the superintendent and security officer of the subject unpatented mining claims, which she had sold to Bill and Lois Mossi. (*Id.* (citing Sentencing Tr., 45-47, Sept. 13, 2006).) The Court then sentenced Defendant and imposed the standard conditions of probation, as well as several special conditions, including (1) excluding her from National Forest Service lands within a half-mile radius from Defendant's former mining claims, (2) excluding her from the Pinecrest Extension and Oak Creek/Twin Peak trails, and (3) prohibiting her from engaging in employment by the Mossi family with regard to the two unpatented mining claims. (*Id.* at 15 (citing Sentencing Tr., 56, Sept. 13, 2006).) Defendant again noted her objections to the special conditions after sentencing. (*Id.* (citing Sentencing Tr., 60, Sept. 13, 2006).)

Defendant Williams appeals Magistrate Judge Rice's conviction and sentence, claiming that (1) the failure of courtroom equipment to fully record portions of the trial, specifically during jury selection and challenges for cause, requires reversal or remand for a new trial; (2) the Court abused its discretion when it allowed a government witness to identify Defendant on a videotape admitted into evidence; and (3) the Court abused its discretion when it imposed special conditions of probation limiting Defendant's

access to certain National Forest Service lands and affecting her employment.

(Appellant's Br. 5.)  For the reasons stated below, I affirm Judge Rice's conviction and

sentence.

## II.     STANDARD OF REVIEW

A criminal defendant convicted by a federal magistrate judge has a right of

appeal to the district court of the district in which the offense was committed.  18 U.S.C.

§ 3402.  "The scope of the appeal is the same as in an appeal to the court of appeals

from a judgment entered by a district judge."  Fed. R. Crim. P. 58(g)(2)(D).

## III.    ANALYSIS

### A.     THE FAILURE OF COURTROOM EQUIPMENT TO FULLY RECORD PORTIONS OF THE TRIAL, INCLUDING JURY SELECTION AND CHALLENGES FOR CAUSE, DOES NOT REQUIRE REVERSAL OR REMAND FOR A NEW TRIAL.

A new trial is not automatically warranted due to the lack of a complete trial

transcript. *Bergerco, U.S.A. v. Shipping Corp. of India, Ltd.*, 896 F. 2d 1210, 1217 (9th

Cir. 1990).  To be afforded a remand based on a missing or incomplete transcript, an

appellant must:

1)     Make a specific allegation of error;

2)     Show that the defect in the record materially affects the ability of the appeals court to review the alleged error; and

3)     Show that a *Rule 10(c)* proceeding has failed or would fail to produce an adequate substitute for the evidence.

*Id.* These factors would be presented only in rare circumstances.  *Id.* After carefully

reviewing the record in this matter, I find that Defendant has failed to show at least two

of these three elements.

First, it is questionable whether Defendant has made a specific allegation of error. Defendant asserts that because bench discussions of her challenges for cause were not recorded, she is prevented from knowing whether any of her challenges for cause were denied by the Court. (Appellant's Br. 7.) Because the denial of a challenge for cause is an appealable issue, *United States v. Martinez-Salazar*, 528 U.S. 304 (2000) and *Ross v. Oklahoma*, 487 U.S. 81 (1988), Defendant asserts that the unrecorded bench discussions regarding her challenges for cause constitute error that requires reversal and remand for a new trial. (Appellant's Reply 7-9.) In *Herndon v. City of Massillon*, 638 F.2d 963, 965 (6th Cir. 1981), the appellant argued for a new trial because a transcript of the jury instructions was not available, preventing review of the instructions for error. The court rejected appellant's argument stating that no specific error in the jury instructions was alleged that would prejudice his rights. *Id.* Appellant also made no effort to provide a substituted record through Rule 10(c). *Id.* "[W]here the lack of a record is the only error charged and where the appellant made no effort to reconstruct the missing record nor to give any cause for that failing, a new trial is not appropriate." *Id.* In this case, Defendant has generally charged that the lack of record impedes her ability to know whether or not there was error, similar to the appellant in *Herndon*. Further, as discussed infra, Defendant has not made an effort to reconstruct the record, nor justified that an adequate record could not be constructed, similar to the appellant in *Herndon*. However, unlike the appellant in *Herndon*, Defendant in this case is asserting that she may have been denied a challenge for cause, which, if correct, would prejudice Defendant's appeal. However, even if it is assumed that Defendant's general allegation of error is sufficient, Defendant fails on other grounds, discussed

6

infra, to show that reversal and remand for a new trial is appropriate.

Second, I find that Defendant has not shown that the missing components of the record materially affects the ability of the appeals court to review the alleged error.  The court in *Murphy v. St. Paul Fire & Marine Ins. Co.*, 314 F.2d 30 (5th Cir.), *cert. denied*, 375 U.S. 906 (1963), rejected the appellants' assertion that they were entitled to a new trial because part of the transcript containing the jury instructions regarding res ipsa loquitur and implied warranty had been destroyed, which appellants claimed were in error.  *Id.* at 31.  The rest of the transcript was intact and showed that appellants were not entitled to charges on these issues.  *Id.* at 32.  Because the missing portion of the transcript was irrelevant to determining appellants claims of error, no error had occurred.  *Id.* at 31-32.  In this case, Defendant states that the unrecorded bench discussions prevent review of challenges for cause and related jury dismissals. (Appellant's Br. 7-8.)  However, the Government's reconstruction of the case through the available trial transcript (Appellee's Answer 8-10), combined with the minutes (Mins., June 21, 2006), indicates that the missing portions of the transcript may not be necessary to determine whether any challenges for cause were not honored by the Court.  The Government shows that the Court throughout the jury selection process updated the record with respect to excused jurors and challenges for cause. (Appellee's Answer 8-10.)  Upon conclusion of voir dire, and before peremptory challenges were exercised, the court stated "'the potential jurors who are now sitting in the jury box and in the first row and in these two seats here have been passed by counsel and there has been no challenge for cause."  (Appellee's Answer 9 (citing Trial Tr., 104, June 21, 2006).)  Defendant neither objected to nor corrected this statement.

(*Id.*)  Counsel then selected four jurors each for their peremptory challenges and the

minutes reflect eight jurors were excused.  (*Id.*; Mins., 2, June 21, 2006.)  Defense

counsel then stated that she would like to make the record complete as it relates to Mr.

Helber, whom she challenged for cause.  (Appellee's Answer 10 (citing Trial Tr., 58-59,

June 21, 2006).)  Mr. Helber had been excused from the jury by the Court before the

peremptory challenges took place. (*Id.* at 9 (citing Trial Tr., 96, June 21, 2006).)  This

concluded the jury selection process.  (*Id.* at 10.)  Defendant did not contest this

information in her reply.  *(See* Appellant's Reply 1.)  If no jurors that were challenged for

cause remained on the jury during trial, and this can be assessed from the available

record, then no error has occurred.  *See Murphy*, 314 F.2d 30; *Ross*, 487 U.S. 81.

Lastly, I find that Defendant has not shown that a Rule 10(c) proceeding would

fail to produce an adequate substitute for the evidence.  Rule 10(c) of the Federal Rules

of Appellate Procedure provides a method for the parties to reconstruct an incomplete

record when a recording or transcript of the trial is unavailable, particularly:

> If the transcript of a hearing or trial is unavailable, the appellant may prepare
> a statement of the evidence or proceedings from the best available means,
> including the appellant's recollection. The statement must be served on the
> appellee, who may serve objections or proposed amendments within 10 days
> after being served. The statement and any objections or proposed
> amendments must then be submitted to the district court for settlement and
> approval. As settled and approved, the statement must be included by the
> district clerk in the record on appeal.

"Before reversal is appropriate, a party complaining about the imperfect transcript must

show that it in fact has been prejudiced by the omission. Where an equivalent substitute

record can be produced, no such prejudice will be found to exist."  *Bitler v. Smith Corp.*,

252 F. Supp. 2d 1123, 1127 (D. Colo. 2003) (citing *Black v. O'Haver*, 567 F.2d 361, 371

(10th Cir. 1977)).  Such a record may be produced under Rule 10(c) through multiple methods, including, for example, the parties' and the court's notes and recollections, *United States v. Smaldone*, 583 F.2d 1129, 1133-34 (10th Cir. 1978), and reconstruction by defense counsel, prosecutors, and court reporters, *United States v. LaSpesa*, 956 F.2d 1129, 1035 (11th Cir. 1992).

In trying to reconstruct the record, Defendant states that "defense counsel is unable to reconstruct from her notes which jurors she challenged for cause and which were denied."  (Appellant's Br. 7.)  However, this does not show that the record could not be sufficiently reconstructed through consultation with the other parties pursuant to Rule 10(c).  In fact, as discussed supra, the Government's reconstruction of the case indicates that there may be sufficient information to reconstruct the record so as to avoid prejudice to Defendant. (*See* Appellee's Answer 8-10.)  In particular, the record reflects that, immediately prior to peremptory challenges and the close of jury selection, the Court stated that no jurors remaining on the jury had been challenged for cause, to which neither counsel objected. (Appellee's Answer 9).  Defendant does not contest the Government's construction of the record in its reply, but simply states that the reconstruction cannot be done. (Appellant's Reply 1.)  Defendant has not shown that an adequate record could not be constructed through the available record and Rule 10(c) proceedings.

Because Defendant has not shown that a Rule 10(c) proceeding would fail to produce an adequate substitute record and has not shown that the defect in the record materially affects the ability of the appeals court to review the alleged error, I find that Defendant is not entitled to reversal or remand for a new trial.

**B.**  **THE COURT DID NOT ABUSE ITS DISCRETION WHEN IT ALLOWED A LAW ENFORCEMENT OFFICER FOR THE GOVERNMENT TO IDENTIFY DEFENDANT ON A VIDEOTAPE ADMITTED INTO EVIDENCE.**

"A district court has broad discretion to determine the admissibility of evidence, and we review the district court's ruling for abuse of discretion[.]" *United States v. Zepeda-Lopez*, 478 F.3d 1213 (10th Cir. 2007) (quoting *United States v. Leonard*, 439 F.3d 648, 650 (10th Cir. 2006)).  "We will not disturb an evidentiary ruling absent a distinct showing that it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error in judgment."  *United States v. Bush*, 405 F.3d 909 (10th Cir. 2005) (citing *United States v. Jenkins*, 3123 F.3d 549, 559 (10th Cir. 2002)).

Defendant asserts that the Court abused its discretion in allowing Officer Closson to identify Defendant as the person on the videotape because:  (1) Officer Closson was not qualified as an expert witness; (2)  the identification invaded the province of the jury, did not constitute opinion testimony, and did not meet the foundational requirements under Fed.R.Evid. 701; and (3) the identification by Officer Closson was prohibited under Fed.R.Evid. 403.

First, Defendant asserts that Officer Closson was required to be qualified as an expert witness; however, Defendant offers no authority for this assertion.  In fact, the case authority relied upon by Defendant supports the alternative proposition that officers introduced as lay witnesses may testify as to a defendant's identity on video tape, in photographs, or through voice recognition. (*See* Appellant's Br. 9-13.)  Therefore, I cannot find that the Court abused its discretion in this respect.

Second, Defendant asserts that the Court abused its discretion because Officer Closson's identification did not meet the requirements of Fed.R.Evid. 701 (Appellant's Br. 12), was not "couched in the form of opinion" (Appellant's Br. 11), and invaded the province of the jury (Appellant's Br. 12).  Rule 701 "permits lay opinion testimony if it is (1) rationally based on the perception of the witness and (2) helpful to the determination of a fact in issue." *United States v. Borrelli*, 621 F.2d 1092, 1095 (10th Cir. 1980).   In evaluating whether a police officer may give lay opinion testimony that the defendant is depicted in a videotape, a majority of jurisdictions, including the 10th Circuit, have looked to "whether the lay witness is more likely to correctly identify the defendant from the photograph than the jury" and whether "the defendant's appearance in the photograph or videotape was different from his appearance at trial." *Robinson v. People*, 927 P.2d 381, 382-83 (Colo. 1996) (citing *Borrelli*, 621 F.2d 1092).  "[C]ourts have been liberal in determining the extent of perception required to satisfy the first requirement of Rule 701." *Bush*, 405 F.3d at 916.

Several cases support the argument that Officer Closson had sufficient personal knowledge of Defendant to provide the level of perception required under Fed.R.Evid. 701.  *See, e.g., United States v. Axselle*, 604 F.2d 1330 (10th Cir. 1979) (a single telephone call, combined with hearing a voice in court, is sufficient for voice identification testimony to go to the jury); *Zepeda-Lopez*, 478 F.3d at 1223 (Federal Bureau of Investigations agent could testify as to defendant's identity on surveillance tape by having "looked at the video many times" and observed the defendant in court); *United States v. Kornegay*, 410 F.3d 89, 95 (1st Cir. 2005) (contact with the defendant six times within a few months was sufficient for detective to identify defendant in

11

surveillance pictures); *United States v. Jackson*, 688 F.2d 1121, 1125 (7th Cir. 1982) (witness permitted to offer lay opinion identifying defendant although only met defendant once); *United States v. Beck*, 418 F.3d 1008, 1010-15 (9th Cir. 2005) (witness sufficiently familiar with defendant to offer identification testimony of defendant in surveillance video where he had met with him four times).  Here, because Officer Closson testified that he had interacted with Defendant about six times before trial and that he had reviewed the tape shortly after it was recorded and identified the person on the tape at that time, I find that Officer Closson had the requisite perception required under Fed.R.Evid. 701.

Several cases also support the argument that Officer Closson's testimony was likely helpful the jury.  *See, e.g., Kornegay*, 410 F.3d 89 (although the surveillance photos had been submitted to the jury, the detective's identification of defendant in the photos was helpful because he had contact with the defendant six times within a few months, the images were blurred, and the appearance of the defendant had changed since the time of the photos); *Zepeda-Lopez*, 478 F.3d at 1223 (detective's identification of defendant in surveillance video was helpful to the jury because the video was blurred and detective had "looked at the video many times").  In this case, Defendant was moving, wearing a backpack in the video, and the quality of the image was "a little bit washed out," as stated by the Government at trial.  (Appellee's Answer 16 (quoting Trial Tr., 110, June 23, 2006).)  As a result, Officer Closson's testimony was likely helpful to the jury.

Defendant objects to Officer Closson's identification of Defendant at trial because the statement by Officer Closson was not "couched in the form of opinion"; however,

12

Defendant offers no case law in support of this argument. (Appellant's Br. 11.)  When

Defendant's counsel objected to the admission of Officer Closson's identification, the

Government responded that Officer Closson can testify as to "who he believes that to

be," after which the Court allowed Officer Closson to testify to such belief.  (Appellant's

Br. 10.)  Making a statement based on belief is making a statement of opinion.  I cannot

find that the Court abused its discretion in this respect.

Defendant also objects to Officer Closson's identification of Defendant because it

invaded the province of the jury.  (Appellant's Br. 12.)  Courts have preferred to allow

juries to assess the weight to be given to lay opinion testimony that the defendant is

depicted in a videotape when the quality or quantity of perception may be in question.

*Bush*, 405 F.3d at 916.  The rule assumes that the adversary system will generally lead

to an acceptable result, because any inadequacies in the admitted testimony can be

highlighted through cross-examination.  *Id.* (citing Advisory Committee Notes to

Fed.R.Evid. 701).  In *Bush*, an undercover police officer was permitted to identify the

recorded voice of the defendant based on three face-to-face conversations with the

defendant prior to arrest, several exchanges via telephone, and testimony from the

officer that he could recognize the defendant's voice. *Id.* at 916-17.  The defendant

presented a witness who testified that the person on the tapes was not the defendant.

*Id.* at 917.  The defendant was also entitled to argue to the jury that the detective had

inadequate contact with him or that other evidence undermined the detective's

credibility.  *Id.*  Because the jury had the benefit of any cross examination testimony and

adverse evidence put forth by defense counsel in determining the weight to place on the

officer's identification, the province of the jury was not compromised. *Id.*  During the trial

13

in this case, Defendant testified that she was not the person in the video tape. (Appellant's Br. 10.)  Defendant's counsel also had the ability to cross examine Officer Closson, and highlight any deficiencies in his testimony regarding his familiarity with Defendant or the clarity of the tape.  Because Officer Closson had the requisite perception under Fed.R.Evid. 701 to be of assistance to the jury in offering his opinion that Defendant was the person in the video tape, and the jury had the benefit of any cross examination testimony and adverse evidence put forth by Defendant in determining the weight to place on Officer Closson's identification, I find that the province of the jury was not invaded.

Finally, Defendant asserts that the identification testimony from Officer Closson is prohibited by Fed.R.Evid. 403.  Under Fed.R.Evid. 403, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."  *See United States v. Nickl*, 427 F.3d 1286, 1300 (10th Cir. 2005).  It is true that the use of a law enforcement officer to identify Defendant in the video increased the possibility of prejudice to Defendant in that she was presented as a person subject to a certain degree of police scrutiny.  *See United States v. Butcher*, 557 F.2d 666, 669 (9th Cir. 1977).  However, trial judges are only overturned on Fed.R.Evid. 403 rulings upon a showing of an egregious error.  *Kornegay*, 410 F.3d at 96.  The defendant in *Kornegay* argued that the detective's identification of the defendant in photographs was prejudicial under Rule 403 in part because the photos had been submitted to the jury and they could make their own determination.  *Id.*  The court disagreed, finding that because the video tape was of poor quality, that the identity testimony was necessary.  *Id.*  Given the poor quality of the video in this case, the ability for Defendant to cross examine Officer

14

Closson, and Defendant's own testimony that she was not the one in the tape, I find that the Court did not make an "egregious error" under Fed.R.Evid. 403.

In conclusion, I find that the proper foundation under Fed.R.Evid. 701 was laid for Officer Closson to testify as to his belief that Defendant was the person in the video tape.  Officer Closson had the requisite perception required for identification, having previously viewed the tape and met the witness six times, and the testimony of Officer Closson was likely helpful to the jury in deciphering the tape given its poor quality and altered appearance of Defendant.  Officer Closson was not required to be qualified as an expert to offer his testimony; and the probative value of his testimony was not outweighed by its prejudicial value under Fed.R.Evid. 403.  Therefore, the Court did not abuse its discretion when it allowed a law enforcement officer for the Government to identify Defendant on the videotape admitted into evidence.

### C.    THE MAGISTRATE JUDGE DID NOT ABUSE HER DISCRETION WHEN SHE IMPOSED CERTAIN SPECIAL CONDITIONS OF PROBATION.

Courts have broad discretion in setting conditions of supervised release and such decisions are reviewed for abuse of discretion.  *See United States v. Erwin*, 299 F.3d 1230, 1232 (10th Cir. 2002); *United States v. Zanghi*, 209 F.3d 1202, 1203 (10th Cir. 2000).  A court may impose special conditions "to the extent that such conditions involve only such deprivations of liberty or property as are reasonably necessary" to provide just punishment for the offense, protect the public, and provide effective correctional treatment. 18 U.S.C. § 3563(b).  It is within the discretion of the court to require as conditions of supervisory release that Defendant "refrain . . . from engaging in a specified occupation, business or profession bearing a reasonably direct relationship

15

to the conduct constituting the offense . . ." 18 U.S.C. § 3563(b)(5), and that Defendant "refrain from frequenting specified kinds of places. . ." 18 U.S.C. § 3563(b)(6).  "The court may only 'impose a sentence [which is] sufficient, but not greater than necessary.'" *Patzer* 940, quoting 18 U.S.C. § 3553(a).

When a court imposes occupational restrictions, its discretion is guided by 19 U.S.C. Appx. § 5F1.5, which requires the court to determine that (1) a reasonably direct relationship existed between the defendant's occupation and the conduct relevant to the offense of conviction and (2) imposition of the restriction is necessary to protect the public because there is reason to believe that, without the restriction, defendant will continue to engage in unlawful conduct related to the offense of conviction.  *Erwin*, 299 F.3d at 1232.  "An occupational restriction should be imposed 'for the minimum time and to the minimum extent necessary to protect the public.'" *Id.* (quoting 18 U.S.C. Appx § 5F1.5(b)).

Defendant claims that the Court abused its discretion in imposing special conditions on her probation, which excluded her from National Forest Service lands within a half-mile radius from Defendant's former mining claims and excluded her from the Pinecrest Extension and Oak Creek/Twin Peak trails, because (1) the Court failed to make any findings pursuant to either 18 U.S.C. § 3563(b) or 18 U.S.C. Appx § 5F1.5, (2) these restrictions impacted her employment as superintendent of the mining claims, and (3) the conditions deprived Defendant of liberty, in violation of 18 U.S.C. § 3563(b).

With respect to Defendant's first claim, it is not necessary for a sentencing court to make specific factual findings regarding each of the factors enumerated under 18 U.S.C. § 3563(b).  The law requires that the record indicate some reason given by the

16

sentencing court for its decision. *Zanghi*, 209 F.3d at 1204.  In *Zanghi*, the sentencing

court had made no record regarding its decision to impose a three-year term of

supervised release or to require six months of that release to be in home confinement.

*Id.* at 1205.  Therefore, the appellate court remanded to the sentencing court to make

such findings.  *Id.*  This case is distinguished from *Zanghi*, because the Magistrate

Judge did make a record as to why she imposed the special conditions of supervised

release.  Evidence was presented at the sentencing hearing that, after Defendant's

conviction, she had enlisted others to post "no trespassing" signs and block citizens

from hiking or riding horses near her mining claims; had made threatening phone calls

to citizens alleged to be "trespassing" on her claims; and that she had refused to accept

responsibility for her conduct and continued to blame the Forest Service for acting

illegally.  (Appellee's Answer 18-19 (citing Sentencing Tr., 12-17, 43-45, Sept. 13,

2006).)  The Court, when it imposed its conditions, reminded Defendant that "there will

be no harassing, molesting, intimidating, retaliating against, or tampering with any

witness to or victim of the acts charged and that there be no intentional contact with any

Forest Service officer without prior permission of the probation officer . . . [a]nd also that

you not cause others to act on your behalf with regard to harassing, molesting,

intimidating, retaliating against, or tampering with any witness to or victim of the acts

charged." (Appellee's Answer 22 (citing Sentencing Tr., 57, Sept. 13, 2006).)  It is clear

from the evidence presented and the record made that the Court had a reasonable

belief that Defendant would continue in her unlawful conduct absent the special

conditions, and that they were necessary to protect the public.

17

It is also apparent that the special conditions bear a direct relationship to the offense of conviction.  Defendant was convicted for multiple counts occurring within the vicinity of her mining claims.  In *United States v. Patzer*, 15 F.3d 934, 941 (10th Cir. 1993), the court held that the magistrate judge did not abuse its discretion when it imposed a special condition on defendant's sentence, prohibiting him from engaging in recreational activity on *any* National Forest Service System ("NFSS") land for two years. Defendant was found guilty of outfitting and big game filming on NFSS lands in the State of Wyoming without a special use authorization from the Forest Service or license from the State.  *Id.* at 936.  Because defendant's sentence was based on defendant's past activities relating to his convicted offense, the magistrate judge did not abuse its discretion.  *Id.* at 941.  I find similarly in this case that, because a majority of Defendant's illegal activity occurred within the vicinity of her mining claims and the specified trails, the Court's special conditions of probation were based on Defendant's past activities relating to her convicted offense.  Therefore, the Court did not abuse its discretion in this regard.

I also disagree with Defendant's contention that she was unreasonably denied employment under 18 U.S.C. Appx § 5F1.5.  The court in *Erwin* found that the district court abused its discretion when it prohibited defendant from partaking in certain employment as a special condition to his supervised release because the employment was not related to any conduct *for which he was convicted*.  299 F.3d at 1233.  The defendant was indicted for illegally transporting fish roe and for possessing ammunition as a convicted felon, but he was only convicted for the latter offense.  *Id.* at 1232. Because defendant's employment as a commercial fisherman was not related to his

18

conviction for possessing ammunition, the court's special condition that he refrain from such employment was an abuse of discretion. *Id.* This case is not applicable here, because Defendant's convictions were related to her efforts to protect her mining claims from those she perceived as being trespassers, including members of the public and the Forest Service. (*See, e.g.,* Appellee's Answer 5 (citing Trial Tr., 151-52, June 21, 2006); Appellee's Answer 6 (citing Trial Tr., 59, 130-32, June 22, 2006).)  Permitting Defendant to be employed as a security guard to protect her former mining claims would entail these same activities. *See, e.g., United States v. Choate*, 101 F.3d 562, 566 (8th Cir. 1996) (upholding ban on self-employment where record showed that defendant's previous businesses involved fraud similar to the offense for which defendant was convicted).  Therefore, I find that the Court did not abuse its discretion when it imposed special conditions that restricted Defendant's employment as a security guard on the subject mining claims.

Finally, Defendant claims, without citing any authority, that the conditions imposed deprived Defendant of liberty, in violation of 18 U.S.C. § 3563(b).  This statute does not state that defendants cannot be deprived of liberty, but only that special conditions cannot *unreasonably* deprive defendants of liberty. *See* 18 U.S.C. § 3563(b). Given that the conditions bear a reasonably direct relationship to the conduct constituting the offense and that the Court reasonably believed that Defendant would continue her conduct absent such restrictions, as discussed above, I find that the Court did not unreasonably deprive Defendant of liberty.

In summary, I conclude from the record that the Court had a reasonable belief that Defendant would continue in her unlawful conduct absent the special conditions,

19

and that they were necessary to protect the public under 18 U.S.C. § 3563(b); the special conditions, including those relating to her restriction on employment under 18 U.S.C. Appx § 5F1.5, were reasonable in light of her activities related to her convicted offenses; and the special conditions did not unreasonably deprive Defendant of liberty in light of the above.  Therefore, I find that the Court did not abuse its discretion when it imposed special conditions on Defendant's probation.

IV.   CONCLUSION

Based on the above, I find that:

(1)   Defendant is not entitled to reversal or remand for a new trial, because Defendant has not shown that a Rule 10(c) proceeding would fail to produce an adequate substitute record and has not shown that the defect in the record materially affects the ability of the appeals court to review the alleged error;

(2)   The Court did not abuse its discretion when it allowed Officer Closson, a law enforcement officer for the Government, to identify Defendant on the videotape admitted into evidence because Officer Closson had the requisite perception required for identification under Fed.R.Evid. 701, the testimony of Officer Closson was likely helpful to the jury in deciphering the tape, Officer Closson's testimony did not invade the province of the jury, Officer Closson was not required to be qualified as an expert to offer his testimony, and the probative value of Officer Closson's testimony was not outweighed by its prejudicial value under Fed.R.Evid. 403; and

(3)     The Court did not abuse its discretion when it imposed special conditions

on Defendant's probation.  It is clear from the record that the Court had a

reasonable belief that Defendant would continue her unlawful conduct

absent the special conditions, and that they were necessary to protect the

public under 18 U.S.C. § 3563(b); the special conditions, including those

relating to her restriction on employment under 18 U.S.C. Appx § 5F1.5,

were reasonable in light of her activities related to her convicted offenses;

and the special conditions did not unreasonably deprive Defendant of

liberty.

It is therefore

ORDERED that Magistrate Judge Gudrun Rice's conviction and sentence are

**AFFIRMED**.  This appeal is **DISMISSED**.

Dated:  December 1, 2009

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge